UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH DAKOTA
CENTRAL DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | 3:19-CR-30003-RAL |
| Plaintiff, | |
| vs. | RESPONSE TO MOTION FOR SENTENCE REDUCTION UNDER 18 U.S.C. § 3582(c)(1)(A) |
| JOCELYN CHASING HAWK, | |
| Defendant. | |

The United States, by and through the undersigned Assistant United States Attorney, Eric Kelderman, submits this response opposing the defendant's Motion for Sentence Reduction Under 18 U.S.C. § 3582(c)(1)(A).

## FACTUAL BACKGROUND

Jocelyn Chasing Hawk was sentenced on August 18, 2020, to 120 months' custody for Conspiracy to Distribute a Controlled Substance.   Docket 101. Chasing Hawk's release date is scheduled for September 1, 2027. https://www.bop.gov/inmateloc/ (last accessed October 3, 2022) (enter BOP register number 12037-273).   Chasing Hawk currently is located at the Federal Correctional Institution in Waseca, Minnesota (FCI Waseca). https://www.bop.gov/locations/institutions/was/.   She is 41 years old.   FCI Waseca currently has 0 current COVID-19 inmate cases and 0 staff positive cases, 0 inmates and 0 staff members have passed away due to COVID-19, and the facility has had 412 inmates and 61 staff members who have recovered from COVID-19.   https://www.bop.gov/coronavirus/ (last accessed October 3, 2022).

Chasing Hawk submitted a request for compassionate release to the warden of FCI Waseca on March 29, 2022.  Docket 113 at 162.  The warden denied her request on April 15, 2022.  *Id.* at 163.  The warden noted Chasing Hawk's daughter was over 18 years old, so the compassionate release provisions did not apply.  *Ibid.*

Chasing Hawk's motion is premised upon a purported need to care for her daughter due to the daughter's health condition, citing her belief that her daughter has Stage 4 Hodgkins Lymphoma.  Docket 107 at 1.  She also cites her 17-year-old daughter's mental breakdown, explaining that her mother is unable to assist with that daughter's needs.  *Ibid.*  Finally, she claims COVID-19 is still adversely affecting inmates at FCI-Waseca.  *Id.* at 2.

As set forth herein, the United States opposes the motion based upon the facts and circumstances presented in this case.

## ARGUMENT

## I.   REDUCTION OF DEFENDANT'S SENTENCE IS NOT WARRANTED.

### A.   Applicable Law.

"In general, sentences are considered final judgments as a court ordinarily 'may not modify a term of imprisonment once it has been imposed.'"  *United States v. Olson*, No. 3:19-CR-30133-RAL, 2021 WL 4478031, at *1 (D.S.D. Sept. 30, 2021) (quoting 18 U.S.C. § 3582(c)); *see Freeman v. United States*, 564 U.S. 522, 526 (2011)).  This Court may only reduce a sentence pursuant to 18 U.S.C. § 3582(c)(1)(A) if, "after considering the factors set forth in section 3553(a) to the extent that they are applicable," the Court "finds that" either "extraordinary and

compelling reasons warrant such a reduction," or an inmate is at least 70 years old, has served at least 30 years, "and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission."

The Sentencing Commission provided explicit examples of what constitutes an "extraordinary and compelling circumstance":

(A)     **Medical Condition of the Defendant**—
(i)     The defendant is suffering from a terminal illness (i.e., a serious and advanced illness with an end of life trajectory).  A specific prognosis of life expectancy (i.e., a probability of death within a specific time period) is not required.  Examples include metastatic solid-tumor cancer, amyotrophic lateral sclerosis (ALS), end-stage organ disease, and advanced dementia.

(ii)     The defendant is—

(I)     suffering from a serious physical or medical condition,

(II)     suffering from a serious functional or cognitive impairment, or

(III)     experiencing deteriorating physical or mental health because of the aging process,

that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover.

(B)     **Age of the Defendant** — The defendant is at least 65 years old; (ii) is experiencing a serious deterioration in physical or mental health because of the ageing process; and (iii) has served at least 10 years or 75 percent of his or her term of imprisonment; whichever is less.

(C)     **Family Circumstances.** —

(i)     The death or incapacitation of the caregiver of the defendant's minor child or minor children.

(ii)     The incapacitation of the defendant's spouse or registered partner when the defendant would be the only available caregiver for the spouse or the registered partner.

(D)     **Other Reasons**.—As determined by the Director of the Bureau of Prisons, there exists in the defendant's case an extraordinary and

compelling reason other than, or in combination with, the reasons described in subdivisions (A) through (C).

U.S.S.G. § 1B1.13 cmt. n.1.

To qualify for compassionate release after having exhausted his or her administrative remedies with the BOP, a defendant must be able to demonstrate one of the listed reasons in note 1.  *See United States v. Shields*, 2019 WL 2645028, at *2 (N.D. Cal. June 27, 2019).  The defendant bears the burden to show "extraordinary and compelling reasons," as defined by U.S.S.G. § 1B1.13, warrant such reduction.  *United States v. Heromin*, 2019 WL 2411311, at *2 (M.D. Fla. June 7, 2019); *see United States v. Jones*, 836 F.3d 896, 899 (8th Cir. 2016) (noting defendant's burden to establish sentence reduction appropriate).

For that reason, to state a cognizable basis for a sentence reduction based on a medical condition, a defendant first must establish that his condition falls within one of the categories listed in the policy statement.  Those categories include, as relevant here, (i) any terminal illness, and (ii) any "serious physical or medical condition . . . that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover."  U.S.S.G. § 1B1.13 cmt. n.1(A).  If a defendant's medical condition does not fall within one of the categories specified in the application note (and no other part of the application note applies), his motion must be denied.

A defendant without a condition that puts him at risk for severe illness cannot show "extraordinary and compelling" circumstances.  *United States v.*

*Bradley*, 2020 WL 3036362, at \*2-3 (D.S.D. June 5, 2020).  The CDC has concluded people with some conditions are at increased risk of severe illness from COVID-19, including: cancer, chronic kidney and lung diseases, dementia/serious neurological conditions, diabetes, down syndrome, serious heart conditions, an immunocompromised state, serious mental health conditions, overweight and obesity, pregnancy, sickle cell disease, smoking, transplant recipients, strokes, substance abuse disorders, and tuberculosis. People with Certain Medical Conditions, Ctrs. for Disease Control & Prevention, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html?CDC_AA_refVal=https%3A%2F%2Fwww.cdc.gov%2Fcoronavirus%2F2019-ncov%2Fneed-extra-precautions%2Fgroups-at-higher-risk.html (updated May 2, 2022).

Before the outbreak of COVID-19, district courts addressing § 3582(c)(1)(A) claims routinely noted: "To be faithful to the statutory language requiring 'extraordinary and compelling reasons,' it is not enough that Defendant suffers from . . . chronic conditions that [he] is not expected to recover from.  Chronic conditions that can be managed in prison are not a sufficient basis for compassionate release." *United States v. Ayon-Nunez*, 2020 WL 704785, at \*2–3 (E.D. Cal. Feb. 12, 2020) (rejecting a claim for compassionate release from a defendant suffering from severe back injuries and epilepsy) (quoting *United States v. Weidenhamer*, 2019 WL 6050264, at \*5 (D. Ariz. Nov. 8, 2019)). Compassionate release is a "rare" and "extraordinary" event, and courts routinely

denied such claims before the current national emergency.  *United States v. Mangarella*, 2020 WL 1291835, at *2–3 (W.D.N.C. Mar. 16, 2020).

Finally, the limitations set in § 3582(c)(1)(A) contemplate sentence reductions for specific individuals, not a widespread release of inmates and modification of lawful sentences to deal with a pandemic.  The Eighth Circuit has held that "the COVID-19 pandemic is not an extraordinary and compelling circumstance to warrant a sentence reduction in [this] case."  *United States v. Marcussen,* 15 F.4th 855, 858 (8th Cir. 2021) (quoting *United States v. Gater*, 857 Fed. Appx. 259, 261 (8th Cir. 2021) (unpublished) (affirming district court's denial of release when court found petitioner "did not have any major medical issues and the mere possibility of contracting COVID-19 in prison, alone, . . . does not meet the extraordinary or compelling standard")); *see United States v. Raia*, 954 F.3d 594, 597 (3d Cir. 2020) (holding the mere existence of COVID-19 in society and possibility it may spread to a specific prison alone cannot independently justify release).  The categories encompass specific serious conditions afflicting individuals, not generalized threats to the entire population.

**B.    Defendant Has Not Met Her Burden Under Notes 1(A), (B), or (D).**

**1.  Medical Conditions and Age.**

Chasing Hawk does not cite any medical condition supporting her request for compassionate release.  She lists no condition that is on the CDC's list of conditions that can possibly cause a person to become seriously ill if she contracts COVID-19.    https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html?CDC_AA_refVal=https

%3A%2F%2Fwww.cdc.gov%2Fcoronavirus%2F2019-ncov%2Fneed-extra-precautions%2Fgroups-at-higher-risk.html    (last accessed October 5, 2022).

Chasing Hawk has received three doses of a COVID-19 vaccine.  Docket 113 at 16, 139.

Additionally, although Chasing Hawk claims COVID-19 still affects people in FCI-Waseca, general prison conditions are insufficient to meet her burden. *Gater*, 857 Fed. Appx. at 261.  Further, as noted above, currently there are no pending cases at FCI Waseca.  Chasing Hawk's general concern about incarceration during the age of COVID-19 is understandable, but it does not form a reason for release.  Thus, she has not met her burden of proof to show extraordinary and compelling reasons based on her medical conditions, age, and conditions of confinement warranting a sentence reduction under § 3582(c)(1)(A). "Moreover, the BOP's efforts to limit the spread of COVID-19 and protect inmates appear to be working." *United States v. Kenefick*, No. CR. 19-50058-01-KES, Docket 204 at 11 (D.S.D. April 13, 2022).  Her medical conditions and the conditions at FCI Waseca form no basis for relief.

Because Chasing Hawk does not cite a medical condition as a justification for compassionate release, she has not met her burden to show she has a condition that constitutes an extraordinary or compelling reason.  The medical records do not support that Chasing Hawk is unable to provide self-care, and she has not established that she cannot care for herself.  *United States v. Korn*, 2020 WL 1808213 at *5 (W.D.N.Y. Apr. 9, 2020) (denying relief for inmate who could walk with a cane, dress, bathe, eat, and perform activities of daily living).

In sum, her conditions are not extraordinary and compelling reasons for release.

Additionally, Chasing Hawk's age of 41 does not meet the requirement under subsection (B). *See* U.S.S.G. § 1B1.13 cmt. n.1(B).

Chasing Hawk also has failed to show she has a condition not meeting the requirements of subsections (A) through (C), but that otherwise constitutes an extraordinary or compelling reason for release. *See* U.S.S.G. § 1B1.13 cmt. n.1(D). Nor has she shown a condition that, combined with reasons described in subsections (A) through (C), constitutes an extraordinary or compelling reason. *Id.* She has not met the requirements listed in application note 1(D).

### 2. Family Circumstances – Note 1(C).

Chasing Hawk has not provided sufficient information to show her family circumstances meet the requirements of subsection (C). *See* U.S.S.G. § 1B1.13 cmt. n.1(C) (noting extraordinary or compelling reasons may be shown by death or incapacitation of caregiver of defendant's minor children or incapacitation of spouse or partner making defendant only available caregiver). In her filings, Chasing Hawk claims her adult daughter is unable to care for herself. She also claims her minor daughter has been in a mental hospital and has attempted suicide. Docket 107 at 1-3.

Chasing Hawk claims her mother (Chasing Hawk's daughter's grandmother) is in poor health and unable to care for Chasing Hawk's minor daughter. Docket 107 at 1-2. Chasing Hawk has not shown her mother was the only available caregiver for either of Chasing Hawk's daughters, one of whom is an adult. *Ibid.* She states her daughters' father lives in a different town. She

also states her own father passed away in January 2021.  Docket 107-1 at 15.

Chasing Hawk's Presentence Investigation Report (PSR) shows that as of August 5, 2020, her older daughter was 18 and her younger daughter was 16. PSR ¶ 49.  That means both daughters are over 18 years old now.  The Guideline provides that an inmate may be released based on "[t]he death or incapacitation of the caregiver of the defendant's minor child or minor children."  U.S.S.G. § 1B1.13 cmt. n.1(C)(i).  Very simply, because her daughters are adults, Chasing Hawk has not met her burden.

Even if the Court reviews the circumstances of her case, Chasing Hawk provides no documentation to support any claim that either of her daughters is disabled.  Chasing Hawk offers no evidence to demonstrate that other family members are unable to provide care.  The United States is not unsympathetic to the situation involving her daughters, but she has not shown that other family members are unable to provide care for the adult daughters.  *See* PSR ¶ 46. While she claims the daughters' father resides in a different town, that does not demonstrate he is unable to provide care.  In fact, while Chasing Hawk contends her daughter has a home in a different town than her father, Docket 107-1 at 15, her adult daughter lives in Eagle Butte.  PSR ¶ 49.  Chasing Hawk may well be banished from the Cheyenne River Reservation, meaning she could not live at her daughter's residence anyway.  PSR ¶ 50.  Further, she provides no other relevant information to support any claim that others are unwilling or incapable of providing her care.  In short, Chasing Hawk has not shown she is the only available caregiver for the adult daughters. *See United States v. Tucker*, No. 3:14-

CR-0367-B-84, 2021 WL 977100, at *2 (N.D. Tex. Mar. 15, 2021) (observing that "courts consider whether . . . a person other than the defendant is available to serve as a caretaker of a minor or incapacitated family member").

Without evidence a defendant "is the only available caregiver of his spouse or that his spouse is the only available caregiver of his children, the Court cannot determine whether [the defendant's] family circumstances give rise to extraordinary and compelling reasons for his release." *Tucker,* 2021 WL 977100, at *2; *see United States v. Hill*, No. 5:18-CR-50022, 2020 WL 3037226, at *3 (W.D. Ark. June 5, 2020) (concluding that even assuming defendant's wife was incapacitated, court "would still need additional, credible evidence as to the lack of alternative caregivers in order to make a definitive finding that [the defendant] is the only available caregiver"); *United States v. Nguyen*, No. CR 16-340 (MJD/BRT), 2021 WL 4952838, at *1 (D. Minn. Oct. 25, 2021) (denying compassionate release in part because defendant did not show the allegedly incapacitated person was sole caregiver of his children."); *United States v. Thomas*, 2020 WL 6737872, at *3 (N.D. Tex. Nov. 16, 2020) (same).  Here, Chasing Hawk has failed to demonstrate family circumstances that constitute extraordinary and compelling reasons for release.

This Court previously addressed a motion from another inmate claiming he was needed to care for his children.  *See United States v. Seeking Land*, No. 3:15-CR-30081-RAL, Docket 66 (D.S.D. Nov. 18, 2021).  In that case, the Court cited a BOP Program Statement outlining factors to be considered in evaluating the best interest of a child.  *Id.* (quoting BOP Program Statement 5050.50 at 8-

9, https://perma.cc/98YN-KRQX (updated Jan. 17, 2019).   Those factors include, *inter alia*, evaluation of whether the inmate has committed violent acts, whether drugs or other dangerous substances were present in the home, the amount of contact the parent had with the child, whether there is evidence of child abuse or neglect, whether there exists documentation of the inmate's parenting skills or termination of parental rights, and the amount of programming the inmate was involved in during incarceration.   *Ibid.*   In that case, the Court cited the defendant's absence from the child during most of the child's life, as well as the defendant's three felony convictions.   *Id.* at 9.   The Court noted it could not determine the inmate's fitness as a parent or whether it would be in the child's best interest to have the inmate serve as caregiver, but noted its skepticism given the defendant's record.   *Ibid.*

In the present case, Chasing Hawk has made an insufficient showing as to the factors outlined.   But the record reveals information that would militate against her compassionate release when analyzed under the factors listed above. Chasing Hawk has been involved in drug activity throughout her adult life.   PSR ¶¶ 6-14, 36, 54-56.   Including her current conviction, she has two drug-related convictions.   PSR ¶¶ 6-14, 36.   She has two prior felony convictions.   PSR ¶¶ 34, 36.   She has used drugs and alcohol since the age of 16, and started using methamphetamine in 2004.   PSR ¶¶ 53-55.   Although she completed treatment numerous times since 1998, she also has failed to complete treatment a number of times, and she has gone back to drug use repeatedly after treatment attempts. PSR ¶ 56.   In other words, while Chasing Hawk has taken the positive step of

completing treatment on some occasions, she has work to do for her recovery, which detracts from her ability to care for her daughters.  Chasing Hawk does not provide information about any positive parenting skills she has developed while in or out of custody.  She has not even shown how much she was part of her daughter's life when she was involved in the extensive drug-trafficking conspiracy for which she was convicted.  In sum, the record provides insufficient support for any claim the best interests of Chasing Hawk's adult daughters would be advanced by her release, even if she had shown incapacitation or unavailability of all other caregivers.

C.     **Section 3553(a) Factors Weigh Against Chasing Hawk's Release.**

Even if the Court concludes Chasing Hawk meets the criteria for compassionate release based on the general COVID-19 pandemic or family circumstances, she is merely eligible for a sentence modification but is not automatically entitled to a reduction.  Under U.S.S.G. § 1B1.13, the Court should not reduce a defendant's sentence unless the Court determines that "the defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g)."  Additionally, this Court must consider the § 3553(a) factors, as applicable, as part of its analysis.  *See* 18 U.S.C. § 3582(c)(1)(A); *United States v. Chambliss*, 948 F.3d 691, 694 (5th Cir. 2020) (noting compassionate release is discretionary and may be refused after weighing § 3553(a) sentencing factors); *Marcussen*, 15 F.4th at 859 (affirming district court's application of § 3553 factors in denying compassionate release).

Chasing Hawk's request for sentence reduction should be denied because

the factors in § 3553(a) weigh against release.  As outlined above, her PSR shows a lengthy history of drug possession, abuse, and distribution up to and including the time of the arrest in this case.

Based on her lengthy history of substance abuse and the facts surrounding the offense for which she was convicted in this case, the record shows Chasing Hawk poses a high risk of danger to the community and even her adult daughters, whom she seeks compassionate release to care for.

The remaining § 3553(a) factors also do not support a sentence reduction. Other factors include:

> (1)  the nature and circumstances of the offense and the history and characteristics of the defendant;
> (2)  the need for the sentence imposed—
> (A)  to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
> (B)  to afford adequate deterrence to criminal conduct;
> (C)  to protect the public from further crimes of the defendant; and
> (D)  to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner[.]

18 U.S.C. § 3553(a).

The nature of the offense and the defendant's history are set forth above and in the PSR.  Those facts show a long history of drug abuse and addiction. The sentence the Court imposed on Chasing Hawk reflects the seriousness of the offense and the Court's assessment of the § 3553(a) factors.  Moreover, her sentence was imposed in August 2020, while the COVID-19 pandemic was ongoing.  Requiring Chasing Hawk to serve the full sentence the Court recently imposed promotes respect for the law, provides just punishment for the offense

and supervision violations, and protects the public from her.

In sum, the § 3553(a) factors weigh against a sentence reduction. The judgment in her case was entered just over two years ago. She still has nearly 5 years of her sentence left to serve. The nature of her crime does not warrant a reduction in sentence. Such a reduction would not be a deterrent, but it would create a disparity in sentencing as to other similar individuals. Accordingly, considering the totality of circumstances under § 3553, this Court should deny the motion.

## II.   IF THIS COURT MODIFIES DEFENDANT'S SENTENCE, IT SHOULD DO SO WITH STRICT AND SPECIFIC CONDITIONS.

If the Court is inclined to grant Chasing Hawk's motion for compassionate release, this Court should substitute a term of probation or supervised release with a condition of home confinement for the duration of Chasing Hawk's current sentence of imprisonment. The government submits that releasing Chasing Hawk outright would not appropriately re-balance the § 3553 factors of this case, particularly given that the present conditions caused by the pandemic are likely impermanent. The BOP has distributed 373,210 vaccines. https://www.bop.gov/coronavirus/ (last accessed October 3, 2022). Additionally, BOP has evaluated and placed in home confinement more than 47,800 inmates since March 2020. https://www.bop.gov/coronavirus/faq.jsp (last accessed October 3, 2022, 2022). In order to minimize risks to public health, the government also respectfully requests that (1) if it orders release, any order provide release only after Defendant's release and travel plans are in place, and (2) set any release 14 days from the date of its order to accommodate BOP's

ability to quarantine her before release to protect the community from spread.

Dated and electronically filed October 3, 2022.

ALISON J. RAMSDELL
United States Attorney

*/s/ Eric Kelderman*

_____

Eric Kelderman
Assistant United States Attorney
515 9th Street, Room 201
Rapid City, South Dakota 57701
Telephone: (605) 342-7822
E-mail: eric.kelderman@usdoj.gov

## CERTIFICATE OF SERVICE

The undersigned hereby certifies on October 3, 2022, a true and correct

copy of the foregoing was served upon the defendant by placing the same in the

service indicated as follows:

Jocelyn Chasing Hawk
12037-273
Waseca FCI
Inmate Mail/Parcels
P.O. Box 1731
Waseca, MN 56093

*/s/ Eric Kelderman*

_____

ERIC KELDERMAN
Assistant United States Attorney