UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

CENTRAL DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>vs.<br><br>JOCELYN CHASING HAWK,<br><br>Defendant. | 3:19-CR-30003-RAL<br><br><br>OPINION AND ORDER DENYING MOTION FOR COMPASSIONATE RELEASE |

Defendant Jocelyn Chasing Hawk filed a pro se motion for compassionate release. Doc. 107. Pursuant to the procedure established by Amended Standing Order 20-06, the United States Attorney and the Federal Public Defender for the Districts of North and South Dakota categorized her motion as Low Priority, Doc. 108, and the Federal Public Defender for the Districts of North and South Dakota chose not to supplement Chasing Hawk's motion. The Government opposes the motion. Doc. 114. For the following reasons, this Court denies Chasing Hawk's motion for compassionate release without prejudice to refiling another motion after she has served a greater portion of her sentence and has developed a more concrete release plan for providing daily emotional support and stability for her daughters.

I.     **Factual Background**

On June 4, 2020, Chasing Hawk pled guilty to one count of Conspiracy to Distribute a Controlled Substance in violation of 21 U.S.C. §§ 846, 841(b)(1)(A), and 841(a)(1). Doc. 88 at 1. On August 17, 2020, the undersigned judge sentenced Chasing Hawk to 120 months

1

imprisonment, followed by five years of supervised release, and to pay a $1,000 fine and $100 special assessment. Docs. 100–01. Chasing Hawk petitioned her warden for an earlier release and was denied. Doc. 107-1 at 12, 14–16.

Chasing Hawk's conviction stemmed from years of conduct involving the possession and distribution of methamphetamine. Doc. 92 at ¶ 6. Chasing Hawk admitted to distributing more than 500, but less than 1,500, grams of methamphetamine on the Cheyenne River Sioux Indian Reservation and in Rapid City, South Dakota. Id. Law enforcement interviews indicate that Chasing Hawk knowingly and intentionally, combined, conspired, confederated, and agreed with persons to knowingly and intentionally distribute or possess with the intent to distribute methamphetamine. Id. at ¶¶ 6, 8–12. Further, the interviews also indicate that Chasing Hawk likely distributed over 1,500 grams of methamphetamine. Id. at ¶¶ 8–12, 14.

Under the sentencing guidelines, Chasing Hawk's total offense level for conspiracy to distribute a controlled substance was 27, and she fell into criminal history category IV due to past convictions for larceny, grand theft, and drug possession. Id. at ¶¶ 31–44, 66. Chasing Hawk's advisory guideline range was 100 months to 125 months; however, because Chasing Hawk faced a mandatory minimum sentence of 120 months, the guideline range became 120 months to 125 months. Id. at ¶ 66. This Court sentenced Chasing Hawk to the lowest sentence it could—the mandatory minimum 120 months imprisonment. Id.; Docs. 100–01.

Chasing Hawk is currently incarcerated at the Waseca Federal Correctional Institution in Waseca, Minnesota. Inmate Locator, Fed. Bureau Prisons, https://www.bop.gov/inmateloc/ (last visited Jan. 3, 2023) (Register Number: 12037-273). Chasing Hawk is projected to be released October 12, 2027. Id. Currently, Chasing Hawk is 41 years old. Id.

In early 2020, a novel coronavirus, COVID-19, quickly spread across the United States and infiltrated correctional institutions. The Centers for Disease Control and Prevention (CDC) has identified certain underlying health conditions that put individuals at higher risk for a severe form of the illness if they contract the disease. Among those at higher risk are individuals with cancer, tuberculosis, obesity, serious heart conditions, sickle cell disease, Type 2 diabetes, as well as several other conditions. See People with Certain Medical Conditions, Ctrs. for Disease Control & Prevention, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html (last updated Dec. 6, 2022).

Chasing Hawk filed a motion for compassionate release based on her family circumstances, specifically her older daughter's cancer diagnosis and her younger daughter's mental health crisis.[1] Doc. 107 at 1–2. Chasing Hawk claims she is unable to get services at the Waseca facility due to the ongoing COVID-19 pandemic, either for psychological treatment relating to grief or other educational services. Id. at 2. Chasing Hawk also argues that she is at risk for a more serious form of COVID-19 due to her medical conditions, listing her latent tuberculosis and being overweight. Id. Chasing Hawk hopes to live with and care for her older daughter as she goes through cancer treatments if she is released early. Chasing Hawk also mentions that she has services in Rapid City she wishes to take advantage of, but does not provide details about a possible release plan. Id. Because she was convicted of a federal methamphetamine conspiracy charge, Chasing Hawk's tribe, the Cheyenne River Sioux Tribe, has banished her from the Reservation preventing her from returning to her home of Eagle Butte.

---

[1] This Court chooses not to use the names of Chasing Hawk's daughters in this opinion and order to protect their identities and confidential personal information. The younger daughter did not file anything in support of Chasing Hawk's motion, which makes this Court reluctant to identify her by name when discussing information in the record about her.

## II. Discussion

In general, federal sentences are considered final judgments because a federal court ordinarily "may not modify a term of imprisonment once it has been imposed." 18 U.S.C.A. § 3582(c); United States v. Hodgin, No. 4:15-CR-40110-02-KES, 2021 WL 928179, at *1 (D.S.D. Mar. 11, 2021). However, in 2018, Congress passed the First Step Act (FSA), Pub. L. No. 115-391, 132 Stat. 5194 (2018), which amended 18 U.S.C. § 3582(c)(1)(A) to permit incarcerated defendants to file motions directly with the court seeking compassionate release once they have exhausted administrative remedies. United States v. Rodd, 966 F.3d 740, 744 (8th Cir. 2020). "The inmate also may go directly to the court if the warden of the inmate's facility does not respond to the inmate's compassionate-release request within 30 days." Id. "Compassionate release provides a narrow path for defendants with 'extraordinary and compelling reasons' to leave prison early." Hodgin, 2021 WL 928179, at *1 (citing 18 U.S.C. § 3582(c)(1)(A)(i)). "It is the defendant's burden to establish that [s]he warrants a [18 U.S.C.] § 3582(c) reduction." United States v. Jones, 836 F.3d 896, 899 (8th Cir. 2016).

When evaluating a compassionate release petition, courts consider the sentencing factors in 18 U.S.C. § 3553(a) and must ensure any potential reduction is consistent with the policy statements issued by the Sentencing Commission. 18 U.S.C. § 3582(c)(1)(A); see Hodgin, 2021 WL 928179, at *1. In addition to the advisory guideline range, a court under 18 U.S.C. § 3553(a) must consider:

> (1) the nature and circumstances of the offense and the history and characteristics of the defendant;
>
> (2) the need for the sentence imposed--
>
>> (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

4

>> (B) to afford adequate deterrence to criminal conduct;
>
> (C) to protect the public from further crimes of the defendant; and
>
> (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;
>
> (3) the kinds of sentences available[.]

Chasing Hawk's effective advisory guideline range was 120 to 125 months based on a total offense level of 27, a criminal history category of IV, and the mandatory minimum ten-year sentence. Doc. 92 at ¶ 66. This Court sentenced Chasing Hawk to 120 months, the shortest length of sentence she could receive. Doc. 101. Chasing Hawk's offense was serious. Chasing Hawk distributed methamphetamine on the Cheyenne River Indian Reservation and in Rapid City, South Dakota for years and was likely responsible for distributing over 1,500 grams of methamphetamine in those communities, though by the terms of the plea agreement she was treated as distributing less than that amount. Doc. 92 at ¶¶ 6–14. Chasing Hawk has a serious criminal history reflecting drug involvement and thefts while in her thirties. Id. at ¶¶ 31–44. The sentence imposed is long but reflected the seriousness of the offense, promoted respect for the law, provided just punishment, deterred the conduct, and protected the public.

The Sentencing Commission's policy statement, which was adopted before the FSA was passed, demands "extraordinary and compelling reasons" to warrant a sentence reduction, as well as requiring that the defendant not pose a danger to the safety of others. Hodgin, 2021 WL 928179, at *2 (citing USSG § 1B1.13(1)-(2) (Nov. 2018)). Yet Congress has not defined what constitutes "extraordinary and compelling reasons." See 28 U.S.C. § 994(t). "The Sentencing Commission was directed to describe what should be considered extraordinary and compelling reasons and fashion 'the criteria to be applied and a list of specific examples.'" Hodgin, 2021 WL 928179, at

5

\*2 (quoting 28 U.S.C. § 994(t)). The Sentencing Commission characterized "extraordinary and compelling reasons" as pertaining to (1) the medical condition of the defendant, (2) time served in combination with advanced age and deteriorating health conditions, (3) compelling family circumstances, and (4) a catch-all category of "extraordinary and compelling reason[s] other than, or in combination with, the reasons described" previously as determined by the Director of the Bureau of Prisons (BOP). USSG § 1B1.13, cmt. n.1(A)–(D). Extraordinary and compelling reasons are further defined within each subset. Id. For example, a medical condition must affect the ability of the defendant to care for themself within the correctional facility or be a terminal illness. USSG § 1B1.13, cmt. n.1(A). Similarly, compelling family circumstances can mean "[t]he death or incapacitation of the caregiver of the defendant's minor child or minor children." USSG § 1B1.13, cmt. n.1(C)(i).

     Chasing Hawk exhausted her administrative remedies when she petitioned her warden for an earlier release and was denied over 30 days ago. Doc. 107-1 at 12, 14–16. Chasing Hawk has only served a little under half of her 120-month sentence.[2] Chasing Hawk alleges several reasons for extraordinary and compelling circumstances, but does not fall into any category on the list provided by the Sentencing Commission. First, Chasing Hawk is not suffering from a terminal illness or a serious condition that affects her ability to care for herself within the prison. See USSG § 1B1.13, cmt. n.1(A)(i). Next, Chasing Hawk is only 41 years old, so her age is not a compelling factor. See USSG § 1B1.13, cmt. n.1(B). Third, Chasing Hawk's children are no longer minors, with her older daughter being at least 20 and her younger daughter being at least 18. See USSG §

---

[2] Chasing Hawk's arrest warrant was executed on January 28, 2019. Doc. 92 at ¶ 5. Chasing Hawk remained in custody throughout her Court proceedings. Id. The total amount of time Chasing Hawk has been incarcerated is just over four years.

1B1.13, cmt. n.1(C)(i); Doc. 92 at ¶ 49 (listing the daughters ages as 18 and 16 in 2020). Thus, Chasing Hawk's petition, to justify granting, must fall under the final catch-all provision.

Chasing Hawk cites how COVID has affected the prison, not only in terms of programming but also because her medical conditions put her at risk. "[T]he mere existence of COVID-19 in society and the possibility that it may spread to a particular prison alone cannot independently justify compassionate release, especially considering BOP's statutory role, and its extensive and professional efforts to curtail the virus's spread." United States v. Saenz, 2020 WL 4347273, at *5 (D.S.D. July 29, 2020) (cleaned up and citations omitted). Chasing Hawk does have latent tuberculosis, and tuberculosis is a condition that puts one at risk for a more serious form of COVID-19 if infected. People with Certain Medical Conditions, supra. However, latent tuberculosis and active tuberculosis are not the same thing; those with latent tuberculosis have no symptoms, do not feel sick, and cannot spread tuberculosis, but, if their latent tuberculosis is not treated, can develop tuberculosis. Latent TB Infection and TB Disease, Ctrs. for Disease Control & Prevention, https://www.cdc.gov/tb/topic/basics/tbinfectiondisease.htm (last updated Dec. 11, 2020). Chasing Hawk's medical records indicate that her latent tuberculosis has been treated by Indian Health Services and, that she has refused follow up treatment from BOP. Doc. 113 at 10, 45, 129. This Court cannot conclude that Chasing Hawk's latent tuberculosis threatens her life at Waseca, especially given the precautions put in place by the BOP to protect her and her fellow inmates. See COVID-19 Modified Operations Plan & Matrix, Fed. Bureau Prisons, https://www.bop.gov/coronavirus/covid19_modified_operations_guide.jsp (last visited Feb. 1, 2023). Further, there are no active cases of COVID in Waseca at this time, and Chasing Hawk has been vaccinated. COVID-19: Coronavirus, Fed. Bureau Prisons, https://www.bop.gov/coronavirus/ (last updated Jan. 19, 2023); Doc. 113 at 154, 156.

7

Chasing Hawk's better argument for compassionate release relates to the struggles of her daughters. Her older has been diagnosed with Hodgkins Lymphoma. Doc. 107-1 at 1, 11. The cancer has caused her physical state to decline and, as that daughter explained in her letter, she needs assistance with certain day-to-day tasks, such as bathing and ambulating. Id. at 4–5. As of May 2022, that daughter has been home, but does not indicate where "home" is, though possibly in Eagle Butte where she lived prior to her hospitalization and where her grandmother lives. Id. at 4; Doc. 92 at ¶¶ 46, 49. It is unclear who has been helping this daughter currently; if released, Chasing Hawk would not be able to return to Eagle Butte to help her daughter because the Cheyenne River Sioux Tribe has banished from its reservation anyone convicted of a federal methamphetamine offense. Doc. 92 at ¶ 50 (discussing the possibility that Chasing Hawk be banished from the Cheyenne River Reservation, where Eagle Butte is located); Doc. 107 at 1 (discussing how Chasing Hawk's mother has opened her home to that daughter but cannot care for her due to her own medical conditions).

Chasing Hawk's younger daughter has mental health and substance abuse issues, recently having attempted suicide and being hospitalized due to her attempt. Doc. 107 at 1; 107-1 at 4. This younger daughter "got into drugs," and her grandmother apparently is not able to provide the stable household needed. Doc. 107-1 at 4. The younger daughter also lives in Eagle Butte with her grandmother, so if Chasing Hawk were released, her banishment would prevent her from joining either daughter in Eagle Butte. Doc. 92 at ¶¶ 46, 49–50. From what Chasing Hawk submitted, her plan would appear to involve living in Rapid City, South Dakota, although it is unclear where, whether both daughters would move, and whether Chasing Hawk could provide a more stable home.

Guidance from the BOP, as it relates to U.S.S.G. 1B1.13 cmt. n.1(C)(i), instructs that the best interests of the child be considered by examining the inmate's history with her children and behavior before and during custody. BOP Program Statement 5050.50 at 8–9 (Jan. 17, 2019), https://perma.cc/98YN-KRQX. Though Chasing Hawk's daughters are young adults and no longer children, it is helpful to consider these factors:

> - Has the inmate committed violent acts before or during the period of incarceration as reflected in the PSR, institutional disciplinary records, or other appropriate documentation?
> - Did the inmate have drugs, drug paraphernalia, firearms, or other dangerous substances in the home while caring for the child prior to incarceration?
> - To what degree has the inmate had contact with or cared for the child prior to arrest, pretrial or pre-sentence, and during incarceration? Staff should review institution records for evidence of contact (telephone, mail, email, visiting log, etc.).
> - Is there any evidence of child abuse, neglect, or exploitation in the PSR or other documents?
> - Are there any documents regarding the inmate's parenting skills or obligations (e.g., child support orders, restraining orders for physical or emotional abuse of spouse, registered partner or children, certificates for classes in anger management or other types of counseling, removal of child from the home for any reasons)?
> - Are there records regarding the termination of parental rights or loss of custody of the inmate's (other) child? . . .
> - Has the inmate engaged in programming (e.g., parenting, anger management) during incarceration that would indicate efforts to improve parenting skills or that would indicate a commitment to caring for the child upon release?

Id.

Chasing Hawk has had one disciplinary incident during this most recent term of incarceration for assaulting an inmate without serious injury. Doc. 113 at 164. Next, while the PSR shows mostly theft and drug related offenses, Chasing Hawk has been arrested for incidents of violence, though those charges ended up being dismissed. Doc. 92 at ¶¶ 2, 44. Chasing Hawk has a history with substance abuse, as reflected by her criminal history. Id. at ¶¶ 31–44. In the year prior to her arrest, while both her daughters were still minors, Chasing Hawk by her own admission was using methamphetamine daily. Id. at ¶ 55. The PSR makes no note of abuse or neglect to Chasing Hawk's daughters. Instead, the PSR notes that Chasing Hawk had a good

9

relationship with her children. Id. at ¶ 49. Chasing Hawk, to her credit, has worked to improve herself while incarcerated. Doc. 113 at 165. Chasing Hawk has completed programing and has attempted to enroll in additional classes. Doc. 107-1 at 6–9, 13. Further, Chasing Hawk has received positive performance evaluations from her work at UNICOR, reflecting that her performance is improving. Id. at 19–21.

Chasing Hawk's efforts toward rehabilitation and her love and concern for her daughters, though admirable and understandable, do not quite satisfy "extraordinary and compelling" circumstances to justify FSA relief given the absence of a concrete release plan or better information about where Chasing Hawk and her daughters might reunite and whether that would in fact improve her daughters' lives. While this Court sympathizes with Chasing Hawk, the PSR lists several other family members who presumably could help care for Chasing Hawk's daughters. Doc. 92 at ¶ 46. Chasing Hawk's own long struggle with substance abuse and mental health issues give her insight into her younger daughter's issues but suggest that Chasing Hawk might herself struggle with sobriety and personal responsibility upon release. Moreover, Chasing Hawk has served less than half of her 120-month sentence, only having completed 48 months of custody. Further, there are many things left uncertain if Chasing Hawk would be released, namely where she would go, given she is banished from her reservation where presumably both her daughters live. Thus, this Court cannot conclude that Chasing Hawk's circumstances satisfy the high standard for relief under the FSA. If something changes and Chasing Hawk is able to provide a more solid plan for where she would go and what she would do after her release, she may file another motion for compassionate release. If she does so, the Federal Public Defender for the Districts of North and South Dakota should supplement the motion and assist Chasing Hawk in addressing the matters that prompted this Court to deny her motion.

### III.     Conclusion

For the reasons discussed above, it is hereby

ORDERED that Chasing Hawk's Motion for Compassionate Release, Doc. 107, is denied.

DATED this  6th  day of February, 2023.

                                              BY THE COURT:

                                              ROBERTO A. LANGE
                                              CHIEF JUDGE